UNITED STATES of America, Appellee,

v.

Jerry URCIUOLI, Appellant.

No. 77–3647.

United States Court of Appeals,
Ninth Circuit.

May 26, 1978.

Joe Reichmann, Los Angeles, Cal., for appellant.

Juan P. Robertson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before ELY and GOODWIN, Circuit Judges, and PALMIERI,* District Judge.

PER CURIAM:

Urciuoli appeals from his convictions on two counts of transporting stolen securities in interstate commerce, violations of 18 U.S.C. § 2314. Here, he makes two arguments: (1) that certain of the stolen certifi-

* Honorable Edmund L. Palmieri, Senior District Judge for the Southern District of New York, sitting by designation.

cates were not "securities" at the time of transportation because they had been cancelled and (2) that there was insufficient evidence adequately to prove transportation of certain of the stolen bonds from New York to California. We reject both contentions.

Urciuoli was employed at the Barbizon Plaza Hotel in New York City from mid 1967 until late 1974. During that period two thefts of securities occurred there. On April 17, 1973, eight State of Israel Bonds were stolen from one of the hotel rooms. On May 3, 1974, nine Banco Popular de Puerto Rico Savings certificates were stolen from another hotel room. Upon learning of the latter theft, the owner of the Banco Popular de Puerto Rico certificates reported them stolen and caused them to be cancelled. In early 1976 Urciuoli appeared in California in possession of the stolen bonds and savings certificates. In February of 1976 Urciuoli negotiated the Israeli bonds by forwarding them to New York and receiving payment in return. Shortly thereafter, Urciuoli attempted to negotiate the Banco Popular de Puerto Rico certificates by sending them to Puerto Rico for payment. However, Banco Popular de Puerto Rico refused to honor the certificates upon ascertaining that they had been reported stolen and had been cancelled. Urciuoli was subsequently arrested, indicted, and convicted.

■ As previously noted, Urciuoli first contends that he cannot be charged with a violation of 18 U.S.C. § 2314 concerning the Banco Popular de Puerto Rico certificates because those certificates had ceased to be "securities" upon cancellation. The certificates had been ordered cancelled by the owner soon after their theft and before Urciuoli moved them in interstate commerce, either by transporting them to California or by sending them to Puerto Rico, in his attempt to negotiate them. We reject this argument, as have other courts. *See Wright v. United States,* 356 F.2d 261 (5th Cir.), *cert. denied,* 385 U.S. 844, 87 S.Ct. 33, 17 L.Ed.2d 77 (1966); *United States v. Weinberg,* 345 F.Supp. 824 (E.D.Pa.1972),

*aff'd,* 478 F.2d 1351 (3d Cir. 1973), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 363, 38 L.Ed.2d 242 (1974). There was nothing on the face of the Banco Popular de Puerto Rico certificates to indicate that they were invalid and could not be redeemed. Appearing to be valid, the certificates could have been transferred to an innocent purchaser who only later, upon an attempt to redeem them, would learn of their cancellation. The fact that the facially valid certificates had been cancelled may have affected their redeemability, but it did not alter their status as "securities" under 18 U.S.C. § 2314. We find nothing in *United States v. Teresa,* 420 F.2d 13 (4th Cir. 1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684 (1970), upon which Urciuoli relies, which alters our conclusion. In *Teresa* the Fourth Circuit held that Treasury notes which had been "perforated, cancelled, and stamped void" upon payment no longer qualified as securities and their interstate transportation in this condition was not a violation of 18 U.S.C. § 2314. Unlike the instruments here involved, the notes in *Teresa* disclosed on their face that they could no longer be negotiated and that there could be no *bona fide* purchaser. The Banco Popular de Puerto Rico certificates in our case could yet have been sold to an innocent purchaser as genuine securities; consequently, they remained securities within the meaning of Section 2314.

■ In support of his second contention, that relating to the sufficiency of the evidence, Urciuoli claims that while the indictment charged him with transporting the bonds from New York to California, the proof adduced at trial showed transportation from California to New York for payment. This argument fails for two reasons. First, viewing the evidence in the light most favorable to the Government, as we must, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Dunn,* 564 F.2d 348 (9th Cir. 1977), there was abundant evidence from which the trial court, as the trier of fact, could have inferred that appellant had transported the bonds from New York to California.

Second, Urciuoli concedes that there was substantial evidence showing interstate transportation from California to New York. The variance, if any, did not adversely affect Urciuoli's substantial rights. Accordingly, any variance that did occur was harmless. *See United States v. Anderson,* 532 F.2d 1218, 1227–28 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976).

The judgments of conviction are AFFIRMED.